1  STEVEN J. JOHNSON, SBN 121568
   MICHAEL B. SMITH, SBN 235764
2  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
3  Palo Alto, California 94304
   Telephone: (650) 849-5300
4  Facsimile: (650) 849-5333
   sjjohnson@gibsondunn.com
5  msmith@gibsondunn.com

6  Attorneys for Plaintiffs
   SANTA CRUZ SURFING CLUB
7  PRESERVATION SOCIETY and HARRY
   MAYO
8

**FILED**

DEC 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*EDL*

9

10

11

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  SANTA CRUZ SURFING CLUB
    PRESERVATION SOCIETY, a California
13  nonprofit public benefit corporation; and
    HARRY MAYO, an individual,
14
                    Plaintiffs,
15
          v.
16
    RYAN RITTENHOUSE, an individual; and
17  SANTA CRUZ SURFING CLUB, INC., a
    California corporation,
18
                    Defendants.
19

20

CASE NO. **CV 08 5783**

**COMPLAINT FOR FALSE TRADEMARK
REGISTRATION, CANCELLATION OF
TRADEMARK REGISTRATION,
DECLARATORY RELIEF RE RIGHTFUL
OWNERSHIP OF CLUB NAME AND
MARK, UNFAIR COMPETITION,
TRADEMARK DILUTION, INJURY TO
BUSINESS REPUTATION, TRADEMARK
INFRINGEMENT, DECLARATORY
RELIEF RE UNENFORCEABILITY OF
LOGO AGREEMENT, DECLARATORY
RELIEF RE UNENFORCEABILITY OF
MEMORABILIA AGREEMENT,
RESCISSION, CONVERSION, ELDER
ABUSE, AND INJUNCTIVE RELIEF**

21

**JURY TRIAL DEMANDED**

22  Plaintiffs Santa Cruz Surfing Club Preservation Society, as successor-in-interest to the

23  original Santa Cruz Surfing Club, and Harry Mayo, for their complaint against Defendants Ryan

24  Rittenhouse and Santa Cruz Surfing Club, Inc., allege as follows:

25  ## INTRODUCTION

26      1.      This is an action for False Trademark Registration, Cancellation of Trademark

27  Registration, Declaratory Relief Re Rightful Ownership of Club Name and Mark, Unfair Competition

28  under 15 U.S.C. § 1125, Unfair Competition Under California Business & Professions Code § 17200

Gibson, Dunn &
Crutcher LLP

1

1  et seq., Trademark Dilution under 15 U.S.C. § 1125, Trademark Dilution under Cal. Bus. & Prof.

2  Code § 14247, Common Law Injury to Business Reputation, Common Law Trademark Infringement,

3  Declaratory Relief Re Unenforceability of Logo Agreement, Declaratory Relief Re Unenforceability

4  of Memorabilia Agreement, Rescission, Conversion, Elder Abuse, and Injunctive Relief, arising out

5  the attempt by Defendant Ryan Rittenhouse, individually and through a corporation he named "Santa

6  Cruz Surfing Club, Inc.," to misappropriate the name, logo, and goodwill of the original Santa Cruz

7  Surfing Club, established in 1936, and its over 70 year history, as well as the museum-quality Harry

8  Mayo Collection of surfing photographs and memorabilia from the early days of surfing in Santa

9  Cruz, for his own personal benefit and profit.

10  **PARTIES**

11  2.     Plaintiff Santa Cruz Surfing Club Preservation Society is a California nonprofit public

12  benefit corporation with its principal place of business at 985 Old Farm Lane, Aptos, California,

13  95003. The Santa Cruz Surfing Club Preservation Society is the successor-in-interest to the original

14  Santa Cruz Surfing Club, an unincorporated association established in 1936. For over 70 years, the

15  Santa Cruz Surfing Club has been dedicated to the support of local surfing activities, the preservation

16  of surfing history in Santa Cruz, and other charitable purposes.

17  3.     Plaintiff Harry Mayo is an individual residing at 251 Marnell Avenue, Santa Cruz,

18  California, 95062. Mr. Mayo is 85 years of age and a founding member of the original Santa Cruz

19  Surfing Club. Mr. Mayo is also the rightful owner of a museum-quality personal collection of surfing

20  photographs, video, and memorabilia from the early days of surfing in Santa Cruz known as the

21  "Harry Mayo Collection."

22  4.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Ryan

23  Rittenhouse is an individual residing at 212 Harbor Drive, Santa Cruz, California, 95062.

24  5.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Santa Cruz

25  Surfing Club, Inc. is a California corporation with its principal place of business at 131 Center Street

26  #3, Santa Cruz, California, 95060, that Defendant Ryan Rittenhouse is the principal of Santa Cruz

27  Surfing Club, Inc., and that Defendants Ryan Rittenhouse and Santa Cruz Surfing Club, Inc. have

28  sold and continue to sell surfing-related apparel using the original Santa Cruz Surfing Club name and

Gibson, Dunn &
Crutcher LLP

2

1 logo at retail and through a website located at http://www.scsurfingclub.com, and further claim to
2 have the sole and exclusive right to control the distribution, sale, and use of photographs and
3 memorabilia in the Harry Mayo Collection.

## JURISDICTION

5     6.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 1367,
6 2201, and 2202, and 15 U.S.C. § 1121. This action arises under, *inter alia*, the trademark laws of the
7 United States, asserts a related claim of unfair competition under the Lanham Act, and is based upon
8 an actual controversy between Plaintiff Santa Cruz Surfing Club Preservation Society, as successor-
9 in-interest to the original Santa Cruz Surfing Club, and Plaintiff Harry Mayo, on the one hand, and
10 Defendant Ryan Rittenhouse and the corporation he named "Santa Cruz Surfing Club, Inc." on the
11 other hand, regarding the ownership of certain property. Any claims in this action over which this
12 Court does not have original jurisdiction are so related to the other claims that they form part of the
13 same case or controversy and are subject to the supplemental jurisdiction of this Court.

## VENUE

15     7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c). Both
16 Defendants reside in this District. A substantial part of the events or omissions giving rise to the
17 claims asserted herein occurred, and a substantial part of property that is the subject of the action is
18 situated, in this District.

## FACTUAL BACKGROUND

20 **The Santa Cruz Surfing Club**

21     8.     In 1936, when surfing was still in its infancy in the continental United States, a group
22 of young surfers in Santa Cruz, California got together to brave the icy waves of Santa Cruz on
23 wooden boards. The members called themselves the Santa Cruz Surfing Club, and formed an
24 unincorporated association by that name. Shortly after its formation, the Santa Cruz Surfing Club
25 consisted of twenty-seven original members, including Plaintiff Harry Mayo.

26     9.     By 1938, the Santa Cruz Surfing Club had adopted formal rules, had a boardhouse and
27 a clubhouse (which it rented from the City of Santa Cruz and later purchased), and collected monthly

28

Gibson, Dunn &
Crutcher LLP

3

1 | dues from club members to pay club expenses, including rent and utilities. The Santa Cruz Surfing
2 | Club held regular meetings and made decisions by majority vote.

3 | 10. In or about 1939, the Santa Cruz Surfing Club adopted a club logo and began selling
4 | T-shirts and sweatshirts bearing the club's name and logo (the "Club Mark"):



14 | 11. In 1986, the original Santa Cruz Surfing Club celebrated its 50th anniversary at the
15 | Cocoanut Grove in Santa Cruz. In attendance were approximately 250 people. The Santa Cruz
16 | Surfing Club made and sold apparel bearing the Club Mark to commemorate the event.

17 | 12. Also in 1986, the Mark Abbott Memorial Lighthouse Surfing Museum opened its
18 | doors at Lighthouse Point in Santa Cruz. The Mark Abbott Memorial Lighthouse Surfing Museum
19 | was and is a public-private partnership between the City of Santa Cruz and the Santa Cruz Museum
20 | Association, a nonprofit organization supporting the Surfing Museum and the Santa Cruz Museum of
21 | Natural History. The original Santa Cruz Surfing Club, and several of its original members, were
22 | involved in the establishment of the Surfing Museum.

23 | 13. Since 1986, the original Santa Cruz Surfing Club has had a close relationship with the
24 | Santa Cruz Museum Association. Club members volunteer as docents at the Surfing Museum and
25 | have held meetings at the Museum of Natural History. For many years dating back to the late 1980's,
26 | the Surfing Museum, with the Santa Cruz Surfing Club's permission, has sold T-shirts with the Club
27 | Mark on them to raise money for charitable purposes, including the support of the Surfing Museum
28 | and the preservation of surfing history in Santa Cruz.

Gibson, Dunn &
Crutcher LLP

4

1    14.    In 1989, the Santa Cruz Surfing Club, and several of its members, became involved in
2    another charitable venture to commemorate the origins of surfing in Santa Cruz—the erection of a
3    surfing statue at Cowell's Beach in Santa Cruz, near the location of the original Santa Cruz Surfing
4    Club boardhouse. The Santa Cruz Surfing Club supported the efforts to plan and erect the surfing
5    statute, and several Santa Cruz Surfing Club members served on the surfing statue project committee.
6    Between 1989 and 1992, T-Shirts bearing the Club Mark were sold to the public with the permission
7    of the original Santa Cruz Surfing Club to raise money for the surfing statute project. In 1992, the
8    surfing statute was erected together with a nearby bronze plaque commemorating the Santa Cruz
9    Surfing Club and listing the names of its original members, including Harry Mayo.

10    15.    In or about 2003, certain employees of Levi Strauss & Co. noticed one of the early
11    Santa Cruz Surfing Club T-Shirts bearing the Club Mark on display in the Santa Cruz Surfing
12    Museum. Levi Strauss thereafter approached the Museum Association and the Santa Cruz Surfing
13    Club about creating a reproduction of the original Santa Cruz Surfing Club T-Shirt with the Club
14    Mark for the Levi Strauss Spring 2004 "vintage collection." The Santa Cruz Surfing Club called a
15    meeting and met with Levi's representatives in the Natural History Museum. The Club members
16    voted to give permission to Levi Strauss to use the Club Mark on a limited-run of "vintage collection"
17    T-shirts in exchange for free T-shirts for Club members and widows, a discount on additional T-
18    shirts, and a monetary donation by Levi Strauss to the Museum Association. Plaintiffs are informed
19    and believe, and on that basis allege, that one of the Levi Strauss reproduction T-shirts, worn by
20    celebrity Paris Hilton, is shown on the cover of *Elle* magazine's March 2004 issue, a true and correct
21    copy of which is attached hereto as Exhibit A.

22    **The Harry Mayo Collection**

23    16.    Over the years, Plaintiff Harry Mayo has compiled a collection of Santa Cruz surfing
24    photographs, video, and memorabilia, including some of the most iconic and well-known
25    photographs of the Club members themselves. The collection is well known in the community as the
26    Harry Mayo Collection, and portions of the collection have been placed on public display from time
27    to time. For example, some of the elements of the Harry Mayo Collection have been placed on
28    display at the Surfing Museum, where Mr. Mayo has served as a docent for over 20 years, and in

Gibson, Dunn &
Crutcher LLP

5

1    other special showings. Mr. Mayo also has made his collection available to local historians and

2    journalists interested in the history of surfing. Mr. Mayo also occasionally allows publishers and

3    filmmakers to use images from his collection by permission.

4        17.    Mr. Mayo has had several conversations with representatives of the Surfing Museum

5    and Natural History Museum about ultimately housing the Harry Mayo Collection at the Natural

6    History Museum. Mr. Mayo would like to do this after the Natural History Museum has moved into a

7    new building with a fire and flood-proof vault for the safekeeping of negatives, videos, films, and

8    albums.

9        18.    On or about August 30, 2000, Mr. Mayo executed a codicil to his will in order to

10   transfer the Harry Mayo Collection to the Santa Cruz Museum for Art and History at the McPherson

11   Center until such time as the Natural History Museum moves into a new building with a fire and

12   flood-proof vault, at which time the Collection would be transferred to the Natural History Museum.

13       19.    Plaintiff Harry Mayo owns all right, title and interest in and to the Harry Mayo

14   Collection, and considers it among his most prized possessions. At all relevant times, including to

15   the present day, Mr. Mayo has been, and remains in possession of the original Harry Mayo

16   Collection.

17   **Registration of the Club Mark By Defendant Rittenhouse Without the Knowledge or**
     **Permission of the Santa Cruz Surfing Club**

18

19       20.    The success of the reproduction by Levi Strauss of the vintage Santa Cruz Surfing

20   Club T-shirts, under license and with the express permission of the Santa Cruz Surfing Club,

21   demonstrated the national appeal—and commercial value—of the Club's name, logo, and goodwill

22   that had been developed over the course of the Club's over 70-year history. Plaintiffs are informed

     and believe, and on that basis allege, that Defendant Ryan Rittenhouse, the grandson of one of the

23   Club's founding members, decided to attempt to misappropriate and exploit that value for his own

24   personal gain without the knowledge or permission of the original Santa Cruz Surfing Club.

25       21.    Plaintiffs are informed and believe, and on that basis allege, that on or about March 5,

26   2004, without the knowledge or permission of the original Santa Cruz Surfing Club, Defendant

27

28

1   Rittenhouse filed a trademark application with the United States Patent & Trademark Office

2   ("USPTO") seeking to register the Club Mark in his own name.

3           22.     Plaintiffs are informed and believe, and on that basis allege, that in that application,

4   Defendant Rittenhouse falsely stated that he believed himself to be "entitled to use such mark in

5   commerce; to the best of [his] knowledge and belief no other person, firm, corporation, or association

6   has the right to use the mark in commerce, either in the identical form thereof or in such near

7   resemblance thereto as to be likely, when used on or in connection with the goods/services of such

8   other person, to cause confusion, or to cause mistake, or to deceive. . . ." In fact, Defendant

9   Rittenhouse knew that the Club Mark, and the right to use it in commerce, belonged to the original

10  Santa Cruz Surfing Club, and that he—a non-member without permission—did not have the right to

11  register or use the Club Mark.

12          23.     Plaintiffs are informed and believe, and on that basis allege, that on or about January 3,

13  2006, Defendant Rittenhouse obtained a Notice of Allowance from the USPTO, giving him six

14  months to file a Statement of Use certifying that he was using the Club Mark in commerce.

15          24.     In or about early 2006, Defendant Ryan Rittenhouse appeared at the door of Mr.

16  Mayo's personal residence, unannounced. At the time, Plaintiffs believe that Ryan Rittenhouse was

17  in his early to mid-twenties. Ryan Rittenhouse was the grandson of Robert Rittenhouse, Sr., one of

18  the original Santa Cruz Surfing Club members, so Mr. Mayo let him in. Mr. Mayo does not recall

19  ever meeting Defendant Ryan Rittenhouse before that day.

20          25.     Defendant Rittenhouse told Mr. Mayo, in words or substance, that he (Rittenhouse)

21  had secured the rights to the Santa Cruz Surfing Club name and logo for the benefit of the Santa Cruz

22  Surfing Club so that people in Southern California would not be able to use the name and logo.

23  Defendant Rittenhouse also represented to Mr. Mayo that he intended to sell T-shirts with the Club's

24  logo on them for the benefit of the Santa Cruz Surfing Club and would give part of the proceeds to

25  the Club.

26          26.     Defendant Ryan Rittenhouse came to Mr. Mayo's house several times in the next few

27  weeks, and showed him T-Shirts that Rittenhouse had made that featured the Club Mark. Mr. Mayo,

28

1    thinking he was helping the Santa Cruz Surfing Club, purchased from Defendant Rittenhouse a

2    number of T-shirts and sweatshirts bearing the Club Mark for himself, family members, and friends.

3        27.    During these visits, Defendant Rittenhouse also asked Mr. Mayo about the Harry

4    Mayo Collection, and about the history of the Club. Mr. Mayo showed Defendant Rittenhouse the

5    Harry Mayo Collection, which he kept at his home. Mr. Mayo also told Rittenhouse of his desire to

6    have the Mayo Collection preserved in perpetuity at the Natural History Museum, once the Museum

7    had capability to do so.

8        28.    On or about May 3, 2006, the members of the Santa Cruz Long Board Union met at

9    Tony & Alba's restaurant to discuss an upcoming Memorial Day event to commemorate the 20th

10   anniversary of the Surfing Museum. Defendant Rittenhouse made a presentation at the meeting and

11   showed the Long Board Union several T-shirts he had made with the Santa Cruz Surfing Club name

12   and logo on them. Defendant Rittenhouse represented that there was a real danger that one or two

13   people in Southern California were going to try to obtain the trademark and that he did it before they

14   could to save the surfing heritage of Santa Cruz, and that he had the blessing of his grandfather and

15   the rest of the surviving members of the Santa Cruz Surfing Club. Defendant Rittenhouse

16   represented at this meeting further that the Santa Cruz Surfing Club would receive half of the net

17   profits from the sale of the shirts. Defendant Rittenhouse asked the Long Board Union for permission

18   to sell Santa Cruz Surfing Club T-Shirts at their surf contest. Defendant Rittenhouse was told that he

19   could display his shirts, but not sell them (as it would take away from sales of Long Board Union's

20   own T-shirts).

21       29.    Defendant Rittenhouse also came to a meeting of the Santa Cruz Museum Association

22   Surfing Museum Steering Committee, held on May 22, 2006 at the Natural History Museum, and

23   represented that he planned to sell shirts with the Club's logo on them to benefit the Santa Cruz

24   Surfing Club and would give the Club $3.00 per T-Shirt that he sold. These representations were

25   false in that Defendant Rittenhouse never gave the Club any amount per shirt sold, and never

26   accounted to the Club for sales of any shirts using the Club Mark.

27       30.    Plaintiffs are informed and believe, and on that basis allege, that on or about May 27

28   and 28, 2006, Rittenhouse sold T-shirts with the Club name and logo on them at a booth at the Santa

Gibson, Dunn &
Crutcher LLP

8

1  Cruz Longboard Union's 22nd Annual Invitational Surf Contest, even though he had been denied

2  permission to do so.

3      31.    On or about May 30, 2006, Rittenhouse filed a Statement of Use with the USPTO,

4  representing that he had first used the Club logo in commerce on April 10, 2006, and falsely declaring

5  that he was "the owner of the mark sought to be registered."

6  ## Rittenhouse Pressures Harry Mayo To Sign Two Written Agreements Without the Benefit of Counsel.

7

8      32.    On or about August 19, 2006, Rittenhouse again appeared at Harry Mayo's home

9  unannounced.  This time, Defendant Rittenhouse brought two written agreements with him that Mr.

10  Mayo had never seen before and did not fully understand.  Defendant Rittenhouse pressured Mr.

11  Mayo to sign them on the spot, without the benefit of counsel, without an opportunity to have them

12  reviewed by all of the other surviving Santa Cruz Surfing Club members, and without a vote of the

13  surviving Santa Cruz Surfing Club members.  Once again, Rittenhouse used a story about an

14  unnamed "them" somewhere in Southern California to pressure Mr. Mayo to sign.  Playing on Mr.

15  Mayo's concern for the preservation of the Harry Mayo Collection and his desire to help the Santa

16  Cruz Surfing Club, and taking advantage of Mayo's age, vulnerability, and lack of sophistication

17  regarding legal matters, Rittenhouse was successful in pressuring Mayo into signing both agreements

18  before he could seek legal counsel or the counsel of friends or other Club members in order to obtain

19  a true understanding of what the agreements were intended by Rittenhouse to mean.

20      33.    Mr. Mayo was further misled by the confusing way in which the two agreements had

21  been drafted.  One of the agreements (the "Memorabilia Agreement," a copy of which is attached

22  hereto as Exhibit B) purported to grant to "the Santa Cruz Surfing Club" "the sole and exclusive right

23  to use all original photographs, photos and images to promote the activities of the Santa Cruz Surfing

24  Club on apparel and other items produced, manufactured, distributed and sold by the Santa Cruz

25  Surfing Club."  "Santa Cruz Surfing Club," was further referred to in the Memorabilia Agreement as

26  "an organization which promotes surfing and the history and memories of surfing in Santa Cruz,

27  California."

28

Gibson, Dunn &
Crutcher LLP

9

34. Mr. Mayo believed that the Memorabilia Agreement was for the benefit of the Santa Cruz Surfing Club of which he was one of the original members. Mr. Mayo did not see or understand that the Memorabilia Agreement purported to define the Santa Cruz Surfing Club as Rittenhouse. In an attempt at legal sleight-of-hand, the preface and signature block of the Memorabilia Agreement refer to "Ryan Rittenhouse, doing business under the name and style of Santa Cruz Surfing Club," which Mr. Mayo did not focus upon or understand at the time he executed the Memorabilia Agreement. Further, Mr. Mayo's signature on the document was procured through coercion and misrepresentations by Defendant Rittenhouse, was without consideration, was based on mistake, and was obtained without allowing Mr. Mayo an opportunity to consult legal counsel and have the true meaning and intent of the Memorabilia Agreement explained to him.

35. The other agreement (the "Logo Agreement," a copy of which is attached hereto as Exhibit C) states that its "sole purpose . . . is to further protect the rights, property and history of the Santa Cruz Surfing Club Est. 1936." The Logo Agreement, however, further purports to give Rittenhouse "full control and ownership of any rights, property, and history attached to the Santa Cruz Surfing Club. This includes exclusive rights to the original club logo, any preceding logos or marks that were established through the sale of t-shirts, clothing, memberships and anything representative of the Santa Cruz Surfing Club."

36. As further evidence of the confusion and misdirection employed by Rittenhouse to induce Mr. Mayo to sign these documents, in the Logo Agreement, which Mr. Rittenhouse presented to Mr. Mayo at the same time as the Memorabilia Agreement, "the Santa Cruz Surfing Club" appears to refer to the original Club, whereas the Memorabilia Agreement attempts to use "the Santa Cruz Surfing Club" to refer to Rittenhouse. The Logo Agreement further appears to seek a signature of Mr. Mayo on behalf of the Santa Cruz Surfing Club.

37. The Logo Agreement does not purport to convey anything of value to the original Santa Cruz Surfing Club in exchange for the use by, or purported assignment of, the name and logo to Defendant Rittenhouse. Mr. Rittenhouse pressured Mr. Mayo to sign the Logo Agreement on the spot, did not give Mr. Mayo an opportunity to show the Logo Agreement to the members of the Santa Cruz Surfing Club, did not give Mr. Mayo an opportunity to put the matter to a vote of the Club

1  members, and did not give Mr. Mayo an opportunity to obtain authorization from the Club to sign on

2  behalf of the Club. It appears that Mr. Gillies and Robert Rittenhouse Sr. later signed the Logo

3  Agreement, but to the extent that the signatures of Mr. Mayo, Mr. Gillies, or Mr. Rittenhouse Sr.

4  purport to be on behalf of the Club, such signatures were made without authority, were made without

5  the benefit of counsel, were based on mistake, were made without consideration, and were procured

6  through misrepresentations by Defendant Ryan Rittenhouse. The Santa Cruz Surfing Club never

7  authorized Mr. Mayo or any other member to sign the Logo Agreement on its behalf, nor did Mayo or

8  any other member seek such authorization before executing the Logo Agreement.

9      38.    In one of his visits to Mr. Mayo, Defendant Rittenhouse presented Mr. Mayo with a

10  $500 check made out to the "Santa Cruz Surfing Club Alumni." Mr. Mayo deposited the check in a

11  new account created in that name, with himself and fellow Club member Bob Gillies as signatories.

12  Mr. Mayo did not understand what the $500 check was for, and thought it was a donation to the

13  original Santa Cruz Surfing Club by Rittenhouse.

14     39.    In another visit to Mr. Mayo's house, Defendant Ryan Rittenhouse arrived with a

15  digital camera and began taking pictures of the Harry Mayo Collection. On another occasion,

16  Defendant Ryan Rittenhouse brought his father and grandfather, and the three of them started going

17  through Mr. Mayo's house, apparently looking for a location to install a safe in order to house

18  negatives of the pictures in the Harry Mayo Collection. Mr. Mayo became increasingly

19  uncomfortable with Defendant Ryan Rittenhouse's visits to his home during this period and began to

20  become suspicious of his true motives. As a result, Mr. Mayo and Mr. Gillies closed out the "Santa

21  Cruz Surfing Club Alumni" account, sent a check to Rittenhouse for $500.22 (the original $500.00

22  plus $0.22 interest), and sought legal counsel.

23     40.    On or about August 22, 2006, the Club Mark was registered in the name of Ryan F.

24  Rittenhouse, Trademark Registration Number 3,133,836.

25     41.    Apart from Defendant Ryan Rittenhouse's attempt to donate $500.00 to something he

26  called the "Santa Cruz Surfing Club Alumni," Defendants have never paid the original Santa Cruz

27  Surfing Club any monies in connection with their use of the Club Mark, their use of the Club's name,

28  or their use of or attempts to benefit from the goodwill, history and memorabilia of the original Santa

Gibson, Dunn &
Crutcher LLP

Cruz Surfing Club. Similarly, Defendants have never paid Plaintiff Harry Mayo any monies in connection with their use of images or other memorabilia from the Harry Mayo Collection.

42. Plaintiffs are informed and believe, and that basis allege, that Defendants continue to use the Club Mark and the name "Santa Cruz Surfing Club" in commerce without the informed and lawful permission of the original Santa Cruz Surfing Club.

43. Plaintiff Harry Mayo is further informed and believes, and that basis alleges, that Defendants continue to claim rights in the Harry Mayo Collection under the Memorabilia Agreement, and that Defendants continue to retain and use digital images from the Harry Mayo Collection in commerce without the informed and lawful consent of Harry Mayo.

## FIRST CAUSE OF ACTION

### False Trademark Registration – 15 U.S.C. § 1120

### (By Plaintiff Santa Cruz Surfing Club Preservation Society against Defendant Rittenhouse)

44. Plaintiffs hereby incorporate herein by this reference the allegations contained in paragraphs 1 through 43 above as though fully set forth.

45. Plaintiffs are informed and believe, and on that basis allege, that Defendant Rittenhouse made materially false statements to the USPTO in both his March 5, 2004 trademark application and in his May 30, 2006 Statement of Use, to the effect that he owned the Club Mark.

46. Rittenhouse knew or should have known at the time he made those statements that the Club Mark was owned by, and was being used (including in commerce) by, the Club.

47. Thus, Rittenhouse procured Trademark Registration Number 3,133,836 by false declarations and representations.

48. As a direct and proximate result of Rittenhouse's unlawful actions, Plaintiff Santa Cruz Surfing Club Preservation Society, as successor-in-interest to the original Santa Cruz Surfing Club, has suffered and will continue to suffer damages, including injury and harm to its reputation and goodwill.

## SECOND CAUSE OF ACTION

### Cancellation of Trademark Registration – 15 U.S.C. § 1119

**(By Plaintiff Santa Cruz Surfing Club Preservation Society against Defendant Rittenhouse)**

49.    Plaintiffs hereby incorporate herein by this reference the allegations contained in paragraphs 1 through 47 above as though fully set forth.

50.    Rittenhouse's registration and use of the Club Mark falsely suggest a connection with the Santa Cruz Surfing Club and/or its members, in violation of 15 U.S.C. § 1052(a).

51.    The mark registered and used by Rittenhouse so resembles the mark and trade name previously used in the United States, and not abandoned, by the Santa Cruz Surfing Club, as to be likely to cause confusion and/or mistake, and/or to deceive consumers, in violation of 15 U.S.C. § 1052(d).

52.    Based on the foregoing, Plaintiffs further seek an order of this Court pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to cancel Trademark Registration Number 3,133,839.

## THIRD CAUSE OF ACTION

### Declaratory Relief Re Rightful Ownership of Club Name and Mark

**(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**

53.    Plaintiffs hereby incorporate herein by this reference the allegations contained in paragraphs 1 through 52 above as though fully set forth.

54.    The original Santa Cruz Surfing Club has used the name "Santa Cruz Surfing Club" consistently since 1936, and continues to use the name.

55.    The original Santa Cruz Surfing Club has used the Club Mark in commerce, including on T-Shirts and sweatshirts, since at least 1939, and continues to use the mark.

56.    Defendant Rittenhouse concealed from Plaintiff Mayo and the other members of the original Santa Cruz Surfing Club his efforts to register the Club Mark with the USPTO.

57.    When Defendant Rittenhouse later revealed that he had registered the Club Mark, he falsely represented to Plaintiffs that he had done so on behalf of the Club and that he would pay part of the profits for the use of the Club Mark to the Club. In addition, Defendant Rittenhouse pressured Defendant Harry Mayo and others to sign the Logo Agreement, which Agreement is unenforceable for several reasons, as hereinbefore and after alleged.

Gibson, Dunn & Crutcher LLP

13

COMPLAINT

1    58.    An actual controversy has arisen, and now exists, between Plaintiff Santa Cruz Surfing

2    Club Preservation Society on the one hand, and Defendant Rittenhouse and his corporation "Santa

3    Cruz Surfing Club, Inc." on the other hand, in that Plaintiff Santa Cruz Surfing Club Preservation

4    Society contends, and Defendants deny, that Plaintiff is the rightful owner of the name "Santa Cruz

5    Surfing Club" and of the Club Mark, that Rittenhouse's Trademark Registration Number 3,133,836 is

6    invalid, and that Defendants have no right to use the name "Santa Cruz Surfing Club" or the Club

7    Mark in commerce, or otherwise, without the permission and authorization of Plaintiff Santa Cruz

8    Surfing Club Preservation Society, as successor-in-interest to the original Santa Cruz Surfing Club.

9    59.    Plaintiff Santa Cruz Surfing Club Preservation Society desires a judicial determination

10   of the respective rights and duties of Plaintiff Santa Cruz Surfing Club Preservation Society and

11   Defendants with respect to Trademark Registration Number 3,133,836, the ownership and right to use

12   the name "Santa Cruz Surfing Club," and the ownership and right to use the Club Mark.  Plaintiff

13   Santa Cruz Surfing Club Preservation Society further seeks a declaration that Trademark Registration

14   Number 3,133,836 is invalid, that Plaintiff Santa Cruz Surfing Club Preservation Society is the

15   rightful owner of the name "Santa Cruz Surfing Club," and that Plaintiff Santa Cruz Surfing Club

16   Preservation Society is the rightful owner of the Club Mark.

17   60.    Such a declaration is necessary and appropriate at this time in order that Plaintiff Santa

18   Cruz Surfing Club Preservation Society and Defendants may ascertain their relative rights and duties

19   with respect to Trademark Registration Number 3,133,836 and the ownership and use of the Club

20   name and Mark.

21                                    **FOURTH CAUSE OF ACTION**

22                                **Unfair Competition – 15 U.S.C. § 1125**

23   **(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**

24   61.    Plaintiffs hereby incorporate herein by this reference the allegations contained in

25   paragraphs 1 through 60 above as though fully set forth.

26   62.    The name "Santa Cruz Surfing Club" and the Club Mark are famous and widely

27   recognized by the general public as being associated with the original Santa Cruz Surfing Club.

28

Gibson, Dunn &
Crutcher LLP

14

COMPLAINT

1    63.   Defendants' unauthorized use of the name "Santa Cruz Surfing Club" and the Club

2  Mark in commerce is likely to cause confusion and to deceive the public as to the affiliation,

3  connection, or association of Defendants with the Club, and to falsely suggest that Defendants' goods,

4  services, or commercial activities originate or are sponsored or approved by the Club.

5    64.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff Santa Cruz

6  Surfing Club Preservation Society has suffered and will continue to suffer damages, including injury

7  and harm to its reputation and goodwill, in amounts as yet unascertained, but according to proof.

8  Defendants' unlawful conduct is causing, and is likely to continue to cause, substantial irreparable

9  injury to the public and to Plaintiff.

10                          **FIFTH CAUSE OF ACTION**

11          **Unfair Competition – Cal. Bus. & Prof. Code § 17200 et seq.**

12                     **(By Plaintiffs against all Defendants)**

13    65.   Plaintiffs hereby incorporate herein by this reference the allegations contained in

14  paragraphs 1 through 64 above as though fully set forth.

15    66.   Defendants' wrongful conduct as described above, both with respect to the name and

16  mark of the Santa Cruz Surfing Club, and with respect to the Harry Mayo Collection, constitutes

17  unfair competition in violation of California Business and Professions Code § 17200, et seq., as such

18  conduct is likely to cause confusion, or to cause mistake, or to deceive the public as to the source,

19  origin and /or sponsorship of Defendants' products, services and other commercial activities.

20    67.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have

21  suffered and will continue to suffer damages, including injury and harm to their reputation and

22  goodwill. Defendants' unlawful conduct is causing, and is likely to cause, substantial irreparable

23  injury to the public and to Plaintiffs.

24                          **SIXTH CAUSE OF ACTION**

25                        **Dilution – 15 U.S.C. § 1125**

26  **(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**

27    68.   Plaintiffs hereby incorporate herein by this reference the allegations contained in

28  paragraphs 1 through 67 above as though fully set forth.

Gibson, Dunn &
Crutcher LLP

15

COMPLAINT

1    69.    The name "Santa Cruz Surfing Club" and the Club Mark are famous and widely

2    recognized by the general public as being associated with the original Santa Cruz Surfing Club.

3    70.    Defendants' unauthorized use of the name "Santa Cruz Surfing Club" and of the Club

4    Mark in commerce is likely to cause dilution of the Club's famous name and mark by blurring or

5    dilution by tarnishment of the name and mark.

6    71.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff Santa Cruz

7    Surfing Club Preservation Society has suffered and will continue to suffer damages, including injury

8    and harm to its reputation and goodwill, in amounts as yet unascertained, but according to proof.

9    Defendants' unlawful conduct is causing, and is likely to continue to cause, substantial irreparable

10    injury to the public and to Plaintiff.

11                        **SEVENTH CAUSE OF ACTION**

12                    **Dilution – Cal. Bus. & Prof. Code § 14247**

13    **(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**

14    72.    Plaintiffs hereby incorporate herein by this reference the allegations contained in

15    paragraphs 1 through 71 above as though fully set forth.

16    73.    The name "Santa Cruz Surfing Club" and the Club Mark are famous and widely

17    recognized by the general public as being associated with the original Santa Cruz Surfing Club.

18    74.    Defendants' unauthorized use of the name "Santa Cruz Surfing Club" and of the Club

19    Mark in commerce began after the mark became famous and is likely to cause dilution of the Club's

20    famous name and mark.

21    75.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff Santa Cruz

22    Surfing Club Preservation Society has suffered and will continue to suffer damages, including injury

23    and harm to its reputation and goodwill, in amounts as yet unascertained, but according to proof.

24    Defendants' unlawful conduct is causing, and is likely to continue to cause, substantial irreparable

25    injury to the public and to Plaintiff.

26                        **EIGHTH CAUSE OF ACTION**

27                    **Common Law Injury to Business Reputation**

28    **(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**

Gibson, Dunn &
Crutcher LLP

16

COMPLAINT

1      76.    Plaintiffs hereby incorporate herein by this reference the allegations contained in

2   paragraphs 1 through 75 above as though fully set forth.

3      77.    Defendants' unauthorized use of the name "Santa Cruz Surfing Club" and of the Club

4  Mark injures and creates a likelihood of injury to the business reputation of the Santa Cruz Surfing

5  Club because persons encountering Defendants and their products and services will believe that

6  Defendants are affiliated with or related to or have the approval of the Santa Cruz Surfing Club, and

7  any adverse reaction by the public to Defendants, the quality of their products, and/or the nature of

8  their business will injure the business reputation of the Santa Cruz Surfing Club and the goodwill that

9  it enjoys.

10      78.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff Santa Cruz

11  Surfing Club Preservation Society has suffered and will continue to suffer damages, including injury

12  and harm to its reputation and goodwill, in amounts as yet unascertained, but according to proof.

13  Defendants' unlawful conduct is causing, and is likely to continue to cause, substantial irreparable

14  injury to the public and to Plaintiff.

15                          **NINTH CAUSE OF ACTION**

16                         **Common Law Trademark Infringement**

17    **(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**

18      79.    Plaintiffs hereby incorporate herein by this reference the allegations contained in

19  paragraphs 1 through 78 above as though fully set forth.

20      80.    As alleged above, the Santa Cruz Surfing Club was the first to use the name "Santa

21  Cruz Surfing Club" and the Club Mark. Plaintiff Santa Cruz Surfing Club Preservation Society, as

22  successor-in-interest to the original Santa Cruz Surfing Club, has the exclusive right to use or register

23  these trademarks.

24      81.    Defendants' unauthorized use of the name "Santa Cruz Surfing Club" and of the Club

25  Mark constitute direct infringement of Plaintiff Santa Cruz Surfing Club Preservation Society's

26  common law trademarks in violation of California common law.

27      82.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' conduct

28  is intentional, malicious, and wanton in that Defendants infringed and continue to infringe Plaintiff

Gibson, Dunn &
Crutcher LLP

17

1  Santa Cruz Surfing Club Preservation Society's trademarks with full knowledge that the Santa Cruz
2  Surfing Club Preservation Society (or its predecessor-in-interest, the Santa Cruz Surfing Club) owns
3  and has the exclusive right to use its common law trademarks.

4      83.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff Santa Cruz
5  Surfing Club Preservation Society has suffered and will continue to suffer damages, including injury
6  and harm to its reputation and goodwill, in amounts as yet unascertained, but according to proof.
7  Defendants' unlawful conduct is causing, and is likely to continue to cause, substantial irreparable
8  injury to the public and to Plaintiff.

9                                      **TENTH CAUSE OF ACTION**
10                          **Declaratory Relief – Invalidity Of Logo Agreement**
11                                  **(By Plaintiffs against all Defendants)**

12     84.     Plaintiffs hereby incorporate herein by this reference the allegations contained in
13  paragraphs 1 through 83 above as though fully set forth.

14     85.     As described above, Defendant Rittenhouse pressured Plaintiff Harry Mayo, and on
15  information and belief, others, to sign the Logo Agreement. For the reasons hereinbefore alleged, and
16  as set forth below, the Logo Agreement is invalid and unenforceable:

17              a. Mr. Mayo was not given the opportunity to consult with the other members of the
18                 Santa Cruz Surfing Club prior to signing the Logo Agreement or to put the matter
19                 to a vote of the Santa Cruz Surfing Club;

20              b. Neither Mr. Mayo nor anyone else who signed the Logo Agreement had the
21                 authority to sign the Logo Agreement on behalf of the Santa Cruz Surfing Club,
22                 and therefore the Logo Agreement is invalid and unenforceable for lack of
23                 authority;

24              c. Mr. Mayo was pressured into signing the Logo Agreement on the spot, in his
25                 home, without the benefit of counsel, and without being given the opportunity to
26                 review the agreement with anyone who might have enlightened Mr. Mayo as to its
27                 true meaning and purpose;

28

Gibson, Dunn &
Crutcher LLP

18

1          d. Mr. Mayo signed the Logo Agreement based upon misrepresentations made by

2              Defendant Rittenhouse, including that it was for the benefit of the Santa Cruz

3              Surfing Club, and that the Club would be paid for the use of the Club Mark, and

4              Defendant Rittenhouse further concealed the true facts from Mr. Mayo;

5          e. Mr. Mayo, who is elderly, is not an attorney, and is not familiar with legal

6              agreements of this sort, did not fully understand the Logo Agreement at the time he

7              signed it, and his purported consent was based on undue influence and mistake;

8          f. The Logo Agreement did not provide for any payment to the Santa Cruz Surfing

9              Club for the assignment or use of the Club name, logo, or goodwill, and is

10             therefore invalid and unenforceable for lack of consideration; and

11         g. The Logo Agreement is invalid and unenforceable in that there was no true

12             meeting of the minds with respect to the meaning and intent of the Agreement.

13     86.    An actual controversy has arisen, and now exists, between Plaintiffs on the one hand,

14  and Defendants on the other hand, in that Plaintiffs contend, and Defendants deny, that the Logo

15  Agreement is invalid and unenforceable for the reasons hereinbefore alleged.

16     87.    Plaintiffs desire a judicial determination of the respective rights and duties of Plaintiffs

17  and Defendants with respect to the Logo Agreement and a declaration that the Logo Agreement is

18  invalid and unenforceable.

19     88.    Such a declaration is necessary and appropriate at this time in order that Plaintiffs and

20  Defendants may ascertain their relative rights and duties with respect to the Logo Agreement.

21                         **ELEVENTH CAUSE OF ACTION**

22            **Declaratory Relief – Invalidity Of Memorabilia Agreement**

23                  **(By Plaintiff Harry Mayo against all Defendants)**

24     89.    Plaintiffs hereby incorporate herein by this reference the allegations contained in

25  paragraphs 1 through 88 above as though fully set forth.

26     90.    As described above, Defendant Rittenhouse pressured Plaintiff Harry Mayo to sign the

27  Memorabilia Agreement on or about August 19, 2006 at the same time as the Logo Agreement. For

28

Gibson, Dunn &
Crutcher LLP

19

1    the reasons hereinbefore alleged, and as set forth below, the Memorabilia Agreement is invalid and

2    unenforceable:

3              a.  Mr. Mayo was pressured into signing the Memorabilia Agreement on the spot, in

4                  his home, without the benefit of counsel, and without being given the opportunity

5                  to review the agreement with anyone who might have enlightened Mr. Mayo as to

6                  its true meaning and purpose;

7              b.  Mr. Mayo signed the Memorabilia Agreement based upon misrepresentations

8                  made by Defendant Rittenhouse, including that it was for the benefit of the Santa

9                  Cruz Surfing Club, which Mr. Mayo understood to mean the original Santa Cruz

10                 Surfing Club, and for the preservation of the collection, and Defendant Rittenhouse

11                 further concealed the true facts from Mr. Mayo, including that the Agreement was

12                 intended to transfer rights in the collection to Rittenhouse for the personal benefit

13                 and profit of Rittenhouse alone;

14             c.  Mr. Mayo, who is elderly, is not an attorney, and is not familiar with legal

15                 agreements of this sort, did not fully understand the Memorabilia Agreement at the

16                 time he signed it, and his purported consent was based on undue influence and

17                 mistake;

18             d.  The Memorabilia Agreement did not provide for any payment to Mr. Mayo for the

19                 purported transfer of rights to the Harry Mayo Collection, and is therefore invalid

20                 and unenforceable for lack of consideration; and

21             e.  The Memorabilia Agreement is invalid and unenforceable in that there was no true

22                 meeting of the minds with respect to the meaning and intent of the Agreement, in

23                 that Mr. Mayo would never have transferred the rights to one of his most prized

24                 possessions to Defendant Rittenhouse if he had understood the meaning and effect

25                 of the Memorabilia Agreement intended by Rittenhouse.

26        91.    An actual controversy has arisen, and now exists, between Plaintiffs on the one hand,

27    and Defendants on the other hand, in that Plaintiffs contend, and Defendants deny, that the

28    Memorabilia Agreement is invalid and unenforceable for the reasons hereinbefore alleged.

Gibson, Dunn &
Crutcher LLP

COMPLAINT

92. Plaintiffs desire a judicial determination of the respective rights and duties of Plaintiffs and Defendants with respect to the Memorabilia Agreement and a declaration that the Memorabilia Agreement is invalid and unenforceable.

93. Such a declaration is necessary and appropriate at this time in order that Plaintiffs and Defendants may ascertain their relative rights and duties with respect to the Memorabilia Agreement.

### TWELFTH CAUSE OF ACTION

### (Rescission)

### (By Plaintiffs against all Defendants)

94. Plaintiffs hereby incorporate herein by this reference the allegations contained in paragraphs 1 through 93 above as though fully set forth.

95. The Memorabilia Agreement and the Logo Agreement are void or voidable for lack of authority, lack of consideration, mistake of fact, lack of informed consent, and lack of a meeting of the minds as to the essential terms of the Agreements.

96. Based on the foregoing, the Memorabilia Agreement and the Logo Agreement should be rescinded.

### THIRTEENTH CAUSE OF ACTION

### (Conversion of the Harry Mayo Collection)

### (By Plaintiff Harry Mayo against all Defendants)

97. Plaintiffs hereby incorporate herein by this reference the allegations contained in paragraphs 1 through 96 above as though fully set forth.

98. Plaintiff Harry Mayo is the sole owner of all rights, title and interest in and to the Harry Mayo Collection.

99. Defendant Rittenhouse intentionally took possession of copies of the photographs and memorabilia in the Mayo Collection for the purpose of profiting from their distribution and re-sale.

100. Defendant Rittenhouse, acting in his individual capacity and on behalf of Defendant "Santa Cruz Surfing Club, Inc.," induced Plaintiff Mayo to sign the Memorabilia Agreement, purported to obtain from Mayo "the sole and exclusive right to use all original photographs, photos

1  and images," and on information and belief, began exploiting the images and other items in the Harry

2  Mayo Collection for personal profit.

3        101.    Rittenhouse took this property without Mr. Mayo's informed consent.

4        102.    As a direct and proximate result of Rittenhouse's conversion, Mr. Mayo has suffered

5  and will continue to suffer damages in amount as yet unascertained, but according to proof.

6  <center>**FOURTEENTH CAUSE OF ACTION**</center>

7  <center>**(Conversion of the Club Name and Mark)**</center>

8  <center>**(By Plaintiff Santa Cruz Surfing Club Preservation Society against all Defendants)**</center>

9        103.    Plaintiffs hereby incorporate herein by this reference the allegations contained in

10  paragraphs 1 through 102 above as though fully set forth.

11        104.    The original Santa Cruz Surfing Club was at all relevant times the sole owner of the

12  rights to the name "Santa Cruz Surfing Club" and the Club Mark, up to the formation of the Santa

13  Cruz Surfing Club Preservation Society, at which time it assigned all of its rights and claims to the

14  Preservation Society.

15        105.    Plaintiffs are informed and believe, and on that basis allege, that Defendants

16  intentionally used the name "Santa Cruz Surfing Club" and the Club Mark in commerce, for their

17  own benefit, including on t-shirts and other clothing, and on the website of Santa Cruz Surfing Club,

18  Inc.

19        106.    Plaintiffs are informed and believe, and on that basis allege, that Defendant

20  Rittenhouse intentionally filed a false registration of the Club Mark with the United States Patent and

21  Trademark Office.

22        107.    Defendants took these actions without the informed consent of the original Santa Cruz

23  Surfing Club.

24        108.    As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered

25  and will continue to suffer damages in amount as yet unascertained, but according to proof.

26  <center>**FIFTEENTH CAUSE OF ACTION**</center>

27  <center>**Elder Abuse**</center>

28  <center>**(By Plaintiff Harry Mayo against Defendant Rittenhouse)**</center>

1 | 109. Plaintiffs hereby incorporate herein by this reference the allegations contained in
2 | paragraphs 1 through 108 above as though fully set forth.

3 | 110. At all relevant times, Defendant Rittenhouse knew or should have known that Plaintiff
4 | Harry Mayo was over 65 years of age.

5 | 111. Defendant Rittenhouse also knew or should have known that the Harry Mayo
6 | Collection, and all rights thereto, were Harry Mayo's personal property.

7 | 112. As described above, Defendant Rittenhouse pressured Plaintiff Mayo into signing the
8 | Logo Agreement and the Memorabilia Agreement, and took, secreted, appropriated, and/or retained
9 | Mr. Mayo's personal property, including digital copies of images and other items in the Harry Mayo
10 | Collection, with intent to defraud and for a wrongful use.

11 | 113. Plaintiff Mayo is informed and believes, and on that basis alleges, that Defendant
12 | Rittenhouse acted in bad faith, and with recklessness, fraud, malice and oppression in the commission
13 | of the foregoing acts and omissions.

14 | **SIXTEENTH CAUSE OF ACTION**

15 | **Injunctive Relief**

16 | **(By Plaintiffs against all Defendants)**

17 | 114. Plaintiffs hereby incorporate herein by this reference the allegations contained in
18 | paragraphs 1 through 113 above as though fully set forth.

19 | 115. Defendants have engaged in conduct designed to divert to themselves the name, Club
20 | Mark, history, and goodwill of the Santa Cruz Surfing Club, as well as the rights to the Harry Mayo
21 | Collection, as hereinbefore alleged.

22 | 116. Unless Defendants are restrained and enjoined from their continuing use of the Club
23 | name and Mark, from their continuing efforts to trade off of the history and goodwill of the original
24 | Santa Cruz Surfing Club, and from their continuing efforts to profit from the Harry Mayo Collection,
25 | it may be extremely difficult to ascertain or recover the monetary equivalent of any damages that may
26 | result from the conduct of Defendants as hereinbefore alleged. Accordingly, Plaintiffs have no
27 | adequate remedy at law, and will suffer irreparable injury and harm unless injunctive relief is granted.

28 |

Gibson, Dunn &
Crutcher LLP

23

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1.    For a judicial declaration that the Santa Cruz Surfing Club Preservation Society, as the successor-in-interest to the original Santa Cruz Surfing Club, is the rightful owner of the Club name and Mark and that Trademark Registration Number 3,133,836 is invalid;

2.    For an order directing the Director of the USPTO to cancel Trademark Registration Number 3,133,836;

3.    For a judicial declaration that the Logo Agreement is invalid and unenforceable;

4.    For a judicial declaration that the Memorabilia Agreement is invalid and unenforceable;

5.    For rescission of the Logo Agreement and Memorabilia Agreement;

6.    For a preliminary and permanent injunction restraining and enjoining Defendants from any further use of the Club name and Mark, from any further use of any images or other items in the Harry Mayo Collection, and from continuing to retain a copy of any of the images or other items in the Harry Mayo Collection;

7.    For all other equitable relief to which Plaintiffs are entitled;

8.    For an award of damages, including lost profits and damage to reputation and loss of goodwill, and any other damages to compensate Plaintiffs for the wrongs alleged herein, and according to proof;

9.    For costs of suit, expenses, and reasonable attorney fees; and

10.    For such other and further relief as the Court deems just and proper.

//
//
//
//
//
//
//

1

## DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

3

4                          GIBSON, DUNN & CRUTCHER, LLP

5

6                          By: _____

7                                         Steven J. Johnson

8                          Attorneys for Plaintiffs
                           SANTA CRUZ SURFING CLUB PRESERVATION
                           SOCIETY and HARRY MAYO

9

10
     100513720_2.DOC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT   A



# ELLE

**BETTER SKIN, HAIR, SEX?**
THE NEW DRUG COCKTAIL

**400+ PAGES!**

# SPRING FASHION GUIDE

SHOP WITH 275 EDITOR'S PICKS

THE TOP PERFECT-SECRETS

PLUS: SUPER

THE
**UNSTOPPABLE**
## PARIS HILTON
PUTS IT ON AT THE RITZ

03

02492

0 274931 6

# EXHIBIT B

# AGREEMENT

THIS AGREEMENT is entered into by and between Ryan Rittenhouse, doing business under the name and style of Santa Cruz Surfing Club, and Harry Mayo who agree as follows:

1.      Santa Cruz Surfing Club is an organization which promotes surfing and the history and memories of surfing in Santa Cruz, California.

2.      Harry Mayo has a cataloged library of personal photos of Santa Cruz surfing history and the Santa Cruz Surfing Club which contains information and photographs from the early 1900's to recent time.

3.      Harry Mayo intends to deliver a digitalized version of original cataloged library photographs of Santa Cruz surfing history and the Santa Cruz Surfing Club to the McPherson Center for public viewing.

4.      Harry Mayo hereby agrees that use of the photographs by the McPherson Center shall be limited to public viewing and display only, and that the Santa Cruz Surfing Club shall have the sole and exclusive right to control the distribution, sales and use of those photographs and memorabilia with the understanding that all profits from such activity shall be used for the benefit of the Santa Cruz Surfing Club.

5.      It is understood and agreed that the Santa Cruz Surfing Club owns and has the sole exclusive right to use all original photographs, photos and images to promote the activities of the Santa Cruz Surfing Club on apparel and other items produced, manufactured, distributed and sold by the Santa Cruz Surfing Club.

1

6.      The Santa Cruz Surfing Club will endeavor to recognize the contribution of Harry

Mayo, Harry Mayo Photo Collection, Santa Cruz Surfing Club Est.1936 for their contribution (5.) of

this agreement whenever possible.

7.      This Agreement is binding upon and shall inure to the benefit of the parties and the

heirs, successors and assigns of the parties to the Agreement.

This Agreement is entered into on the dates indicated below.


Dated: _8/19/06_


RYAN RITTENHOUSE
Doing Business As
Santa Cruz Surfing Club


Dated: _8/19/06_

HARRY MAYO


2

# EXHIBIT C

Agreement between the Santa Cruz Surfing Club est. 1936 and Ryan Rittenhouse:

The sole purpose of this agreement between the Santa Cruz Surfing Club and Ryan Rittenhouse is to further protect the rights, property and history of the Santa Cruz Surfing Club Est. 1936

This Agreement will allow Ryan Rittenhouse full control and ownership of any rights, property, and history attached to the Santa Cruz Surfing Club. This includes exclusive rights to the original club logo, any preceding logos or marks that were established through the sale of t-shirts, clothing, memberships and anything representative of the Santa Cruz Surfing Club.

Ryan Rittenhouse as the sole owner agrees to further the preservation and history upon gaining exclusive rights to the Santa Cruz Surfing Club Est. 1936. This agreement shall take affect upon all parties' signatures.

Santa Cruz Surfing Club

Harry Mayo

Date _Harry J Mayo_

Date: _8/19/06_

Bob Gillies

Date _____

X _____

Robert Rittenhouse Sr.

Date _____

X _7/24/07_

Ryan Rittenhouse

Date _____

_8/19/06_